# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, <br>     Plaintiff, <br> vs. <br> Rodrigo Reichell-Hernandez, <br>     Defendant. | CR 11-1155-TUC-CKJ (JCG) <br><br> **REPORT & RECOMMENDATION** |

Pending before the Court is a Motion to Dismiss Indictment filed by Defendant Rodrigo Reichell-Hernandez on July 27, 2011. (Doc. 60.) Defendant moves for dismissal of the indictment on the ground that the government has destroyed exculpatory evidence in violation of *United States v. Brady*, 373 U.S. 83, 87 (1963) and *Arizona v. Youngblood*, 448 U.S. 51, 58 (1988). According to Defendant, the government improperly destroyed his clothes and his cellular phone. The government filed a response on August 8, 2011. (Doc. 66.) This matter came before the Court for a hearing and a report and recommendation as a result of a referral made on March 4, 2011, pursuant to LRCrim 5.1.

Defendant's Motion was set for evidentiary hearing and evidence was heard on August 24, 2011. Defendant, who is presently in custody, was present and represented by counsel. This matter was submitted following oral argument at the conclusion of the hearing and taken under advisement.

Having now considered the matter, the Magistrate Judge recommends that the District Court, after its independent review, deny Defendant's Motion to Dismiss.

## FACTUAL FINDINGS

On February 28, 2011, Defendant was arrested and charged with conspiracy to possess

with intent to distribute marijuana, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B)(vii). Defendant was apprehended with three other individuals after agents observed a group of eight suspected narcotics smugglers in a remote mountainous area. A helicopter crew had a visual of the suspects and tracked them with a spotlight as they ran. Border Patrol Agents, including Agent LaTourneau, responded to the scene and were able to apprehend four individuals, including Defendant. The area where the suspects were apprehended was a rough, mountainous area, filled with rocks, cacti, washes and dirt, located approximately three miles north of the border. The agents had to travel over three mountains and some hills to get to the location. Agent LaTourneau described the area as treacherous and testified that it was not an easy walk. The area was twelve to thirteen miles east of the nearest hard top road and seven tenths of a mile from the nearest dirt road.

Agent LaTourneau testified that when he arrived at the location he could see the Defendant in the helicopter spotlight, laying face down on the ground. Defendant was wearing a dark maroon polo shirt with white stripes, jeans and newer Nike tennis shoes; he had a sweatshirt tied around his waist. Agent LaTourneau testified that it is not uncommon for people to shed clothing while running away. Near where the suspects were apprehended, agents found five marijuana bundles and two bundles containing food and supplies.

Agent LaTourneau believed that the four individuals who were apprehended knew each other as evidenced by their interactions and body language. He testified that they seemed comfortable around each other. He directed them not to speak to each other, but they did speak to each other in Spanish. During the entire time that Agent LaTourneau was in contact with the Defendant, the Defendant never denied being part of the group.

After his apprehension, Defendant was taken to the Ajo Border Patrol Station for processing. Agent LaTourneau transported all of the Defendant's property and Defendant to the Ajo station. Agent LaTourneau recalled the Defendant having a black backpack similar to a school backpack. Agent LaTourneau, who had searched the Defendant, does not recall him having a cellular phone. Agent LaTourneau is not involved in evidence issues.

He did not know if anything in Defendant's possession could have been used for evidence. He took everything to the station.

At the Ajo station, Defendant was read his rights and waived them, agreeing to speak with agents. Agent Patrick Kindle testified that the Defendant first denied involvement in marijuana smuggling. Defendant said that he had crossed illegally into the United States on February 28, between 4:00 and 5:00 pm with a group of eight other individuals who were all carrying their own backpacks and personal food. After Agent Kindle asked Defendant to tell the truth, Defendant began to cry and he said that he had carried a bundle filled with food for the rest of the group which was carrying marijuana. During the interview, the Defendant never recanted the admission.

Agents confiscated Defendant's clothing. The clothing was bagged and all of Defendant's possessions were listed on CBP Form 6051. Agent Kindle did not believe that Defendant's clothing or belongings could exculpate the Defendant. Agent Kindle did not take photographs of the clothing.

Defendant was made aware of and acknowledged the possibility of destruction of his property. Defendant, who reads Spanish, admitted that on March 2, 2011, he signed an "abandonment form." The form notifies the signer that he may request the return or release of the property. Bold print on the form provides: **Your request must be made with our office within 30 days from the date of your receipt of this letter.** At the hearing, the Defendant testified that he had been told that his property would be destroyed in thirty days.

At the evidentiary hearing, the Defendant also testified as to how he came to the location where he was found on February 28. His testimony was contrary to the information he had provided to Agent Kindle at the Ajo Border Patrol Station. The Defendant testified that he had been in Phoenix staying at the house of and providing electrical work for a person whose name he did not know. He decided to go back to Mexico after fifteen days. He took a shuttle and asked to be dropped off on the highway just north of the border with another man whose name he did not know. He did not take any suitcases or supplies with him to Phoenix.

1    The shuttle left around 5pm Monday, February 28, and three to four hours later, at his
2    request, dropped him off along State Route 85. He did not know which mile marker he was
3    dropped at or how far he was from the border at the point of drop off. He did not know how
4    to get to the border. The Defendant testified that the unknown man he was with knew how
5    to get to the border and the Defendant planned to follow him. They walked in the desert for
6    approximately four hours. It was dark. The Defendant ran into rocks and dust and cacti. By
7    the time Border Patrol arrived, it was 3:00 a.m.

Defendant testified that he had a cell phone with him, but was unable to make calls in the United States because it was a Mexican cell phone. He testified that the clothing he was wearing was newer and that he had purchased it in Phoenix. Defendant contended that his clothing was clean at the time of his arrest and that he was sitting on a rock, not face down, when Border Patrol agents found him. He claimed that he did not have a backpack with him.

On March 30, 2011, Defendant was indicted on two counts: conspiracy to possess with intent to distribute marijuana and possession with intent to distribute marijuana, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B)(vii).

On May 2, 2011, Defendant set a change of plea hearing before the Magistrate. The change of plea hearing was subsequently vacated. According to the government, Defendant did not inquire about his property until sometime after this date. The government has been informed by agents that Defendant's property was destroyed pursuant to United States Customs and Border Patrol policy.

**ANALYSIS**

The suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *See United States v. Brady*, 373 U.S. 83, 87 (1963). The government has a duty to preserve evidence if (1) the evidence is material and exculpatory in nature, (2) the exculpatory value was apparent before the evidence was destroyed and (3) the defendant would be unable to obtain comparable evidence by other

reasonably available means. *See California v. Trombetta*, 467 U.S. 479, 489 (1984). If, however, the evidence is not material and exculpatory in nature but is instead "potentially useful evidence," a different legal standard applies. *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). In this second scenario, failure to preserve "potentially useful evidence" does not violate due process "unless a criminal defendant can show bad faith on the part of the police." *See id.* at 58. Thus, the initial inquiry in review of a Motion to Dismiss brought pursuant to *Brady* is whether the evidence at issue was "material and exculpatory" or "potentially useful."

Generally, evidence is material and exculpatory if it is clearly favorable to the accused, such as the confession of a co-defendant, *see Brady*, 373 U.S. at 87, or a victim's criminal record supporting a defendant's claim of self-defense. *See United States v. Agurs*, 427 U.S. 97, 114 (1976). Potentially useful evidence, on the other hand, is evidence that "could have been subjected to tests, the results of which might have exonerated the defendant," such as Breathalyzer samples, *see Youngblood*, 488 U.S. at 57, or seized cocaine. *See Illinois v. Fisher*, 540 U.S. 544, 546 (2004).

Defendant does not articulate whether the allegedly destroyed evidence was material and exculpatory or potentially useful. Defendant claims generally that the clothing he was wearing on the date of his arrest was new and unsoiled, and therefore could have been used to prove that Defendant was not a part of the group that was arrested because that group had been traveling on foot for a day and a half. Defendant also claims that there were no burlap fibers on his clothing.

To the extent Defendant's clothes had evidentiary value, it was as potentially useful evidence. The clothing does not have any extrinsic exculpatory value. Only if the clothing were inspected, and Defendant's characterization of the clothing as new and free of burlap fibers proved to be correct, would it be potentially useful. Similarly, Defendant's cell phone would be potentially useful evidence only if, upon examination, it could be determined that Defendant had not used the phone to communicate with anyone else involved in the alleged

illegal drug smuggling. Thus, Defendant's motion depends upon the applicability of *Youngblood* and proof by Defendant that the government destroyed evidence in bad faith.

An officer does not act in bad faith unless he or she acts with the purpose of depriving the defendant of the potentially exculpatory evidence. *See United States v. Barton*, 995 U.S. 935-36 (9th Cir. 1993). Mere negligent destruction of evidence does not constitute an act of bad faith. *See id.* Defendant has failed to make a showing of bad faith on the part of the government as required by *Youngblood*. As a threshold matter, there is little evidence to suggest that Defendant possessed a cell phone at the time of his arrest which was subsequently destroyed. CBP Form 6051A, #791917 does not list a cell phone among Defendant's possessions.[1] In any event, there is no evidence that the agents knew or should have known that Defendant's clothing and cell phone had any evidentiary value, particularly in light of the circumstances of this case. The examination of the Defendant's clothing for burlap fibers would not be of significant evidentiary value where the Defendant confessed that he carried supplies, not a burlap pack of marijuana. There was no evidence that the supplies were contained in a burlap pack. The Defendant's claim that the cleanliness of his clothes would show that he was not part of the backpacking group does not demonstrate that the agents should have known the potential evidentiary value of the clothing. Agent LaTourneau credibly testified that it is not uncommon for backpackers to shed clothes during their journey. Moreover, the Defendant himself testified that he had in fact walked in that same dusty desert area over the same hilly, rocky land for almost four hours. His testimony suggests that one can in fact walk through the desert and not become dirty or that he shed his clothes as Agent LaTourneau suggested.

The fact that the Defendant's property was not immediately destroyed and was made available to the Defendant is the most compelling evidence that the agents did not act with the purpose of depriving the Defendant of exculpatory evidence. Defendant received notice that his property had been preserved but could be destroyed if not claimed within thirty days.

---

[1] Defendant did testify that he possessed a cell phone. However, his testimony as a whole was incredible; therefore, the Magistrate Judge gives it little, if any, weight.

1 Defendant did not inquire about his property until after the date of destruction.[2]  If the
2 agents' purpose was to deprive the defendant of potentially exculpatory evidence, the
3 evidence would not have been preserved and made available to the Defendant.  As there is
4 no evidence of bad faith on the part of the agents, there can be no due process violation.

**RECOMMENDATION**

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court deny Defendant's Motion to Dismiss. (Doc. No. 60.)  The parties have fourteen (14) days to serve and file written objections to the Report and Recommendation.  The parties are advised that any objections should be filed with the following caption: **CR 11-1155-TUC-CKJ.**

DATED this 7th day of September, 2011.

_____
Jennifer C. Guerin
United States Magistrate Judge

---

[2] Defense counsel argues that it was not sufficient for agents to inform the Defendant that his clothing would be preserved for a certain amount of time. Defense counsel suggests that the law should require preservation or that the government should be required to file a notice of its intent to destroy the property so that counsel would be informed as is done in cases involving the destruction of drug contraband. No legal authority was provided in support of these arguments. Given applicable precedent, particularly *Arizona v. Youngblood*, 448 U.S. 51, 58 (1988), the Magistrate Judge finds the arguments unpersuasive.